Clerk will call the next case. Case number 3-14-0043. Christy Dutton v. Wyman Appellant by Jeffrey Rock. Mr. Rock, you may proceed. Police and Courts. Jeffrey Rock for Barbara Wyman. I would pose the question on appeal that I proposed to the trial court at the end of the trial of this case. What, if anything, can you award to Dutton? The trial court said at the close of the evidence in this case that the testimony revealed there was a survey, it was 1.99 acres, and that there was proof that Christy Dutton had an agreement to get this property if she cared for her granddaughter. The proof was, after trial, because this came as a surprise, I had requested surveys in my discovery pre-trial, none were ever produced, and I argued to the trial court, there's nothing here. You can't give a tract of land that sits in a larger tract of land without identifying it. The court apparently didn't think it needed a survey and said, well, there's been testimony, there's been one. I asked for rehearing. I asked to extend the record. The proof was that there had been false testimony given, that there was no survey, and that there was nothing even close to what had been testified to. Let me go back and start with the survey itself. There had been repeated allegations or testimony in the trial court by Richard Chain and Robert Chain. Both those gentlemen had sued Barbara Wyman previously. This is round three of a long-standing family feud. They had claimed that she had basically tortiously interfered with their inheritance, and that case eventually was dismissed. Christy Dutton had also sued Barbara Wyman previously on behalf of Barbara Wyman's mother, for whom Christy Dutton had a power of attorney. The importance of those two previous lawsuits is both of those lawsuits that were filed after this gift was allegedly made of this property, neither one of them claimed any exclusion. For example, Christy Dutton's lawsuit said all of the land that Julia Shane had given Barbara Wyman needs to be returned. However, it's clear that the property that Dutton said she was gifted sat on that property, and she never tried to carve out anything out of that first lawsuit. The same for Richard and Robert Chain. Clearly, Dutton's property that she was claiming was on the land that Richard and Robert Chain said, well, we were deprived of all of this, we want a money judgment, but they never excluded any of the land that supposedly Christy Dutton was promised by the Shane brothers and by my client. The evidence was that Dutton had lived in a house owned by Barbara Wyman for 18 years prior to moving into this house, which she now claims, which Barbara Wyman also owned as a result of a transfer from her mother to Barbara. There is no question that Dutton moved in and took care of Julia Shane for a period of time, but there's four issues here with respect to that. There is no evidence of what Christy Dutton was supposed to do in return for getting this house from Barbara Wyman. In fact, if you look at the briefs, she testified, well, you know, there was never any understanding about what I had to do in order to earn this house. She was asked, well, if you took care of your grandmother a day, did you earn the house? Well, yeah, I think so, but that was never discussed. There was no agreement as to what she would need to do in order basically to earn this house. With respect to the house itself, it's clear that this sits on a tract of about 142 acres. The agreement Dutton testified to was that she would receive this house and a garage. That was all she could testify to. It is clear that it has to be clear and convincing evidence on an oral contract to convey land, and there can be no doubt about the terms. When asked at trial, she said, well, there was no discussion about how long I had to take care of my grandmother. There was no discussion about when I would actually get title. There was no discussion about when she would get a deed, and in fact, after the grandmother died, there was no request that she get a deed. This house was always in Barbara Wyman's name, and if indeed Christy Dutton was to be compensated for taking care of Julia Shane, once Julia Shane died, then she theoretically had fulfilled her part of the bargain and therefore should have gotten a deed to the property. At the trial years later, she said, no, I had never requested a deed from anyone. And what prompted this whole thing was that there was a petition claim over this property, and Barbara Wyman had filed a count against Christy Dutton saying she needs to pay rent for living in this house. The petition claim was between Barbara and the two brothers, correct? That's correct. The claim because this was all part of a farm or property that they inherited from their mother, Julia? And, yes. And so the petition claim then is when Dutton realizes that now this property is part of a bigger dispute property that she thought was coming to her, and so that sort of initiates her taking steps to secure her interest or what she believes to be her interest. Well, since she was on the property that was to be partitioned and claimed at least was there or living there, she was made a defendant and said, look, we need rent from you because you're not living here for free anymore. And that's how this got prompted. Then Dutton made a claim, first an affirmative matter, and then actually filed a claim saying, oh, no, I'm entitled to this property. So that's procedurally how we got here. The partition started because there was no agreement as to how to divide up all of the farmland. But prior to the filing of the partition, Dutton had never claimed that she was entitled to a deed or that she was the owner of this property. So it comes up in the partition action, I guess procedurally. So it actually went to trial on her counterclaim saying that she was entitled to this property. That's how we got here. But there's no evidence that she made any claim that she was the owner prior to filing this, what I would call a counterclaim in the partition case. And as I said, she had lived basically free of charge for 18 years in a house that my client owned. And she moved to another house, which my client owned as a result of the transfer from my client's mother. Her living in her mom's house for the 18 years prior had nothing to do with this, right? I mean, she moves into the second home at the request of the family that she take care of the grandmother. Well, she was taking care of the grandmother in the house that Barbara owned that was right across the street. Right. Okay, already. Barbara was taking care of her mother. And then she became ill and could no longer take care of her mother. And so she has her daughter, Miss Dutton, some arrangements made for her to move in to the home across the street where the grandmother's at. Right, the grandmother moved with Dutton across the street from the house she'd been living in 18 years  My only point is that I think there was testimony that grandma, Julia Sheen, wanted to go home to be taken care of. And they just simply moved from one place to another is our view of the whole situation, that she got one house for free, she moved to another house for free. Yes, she was taking care of Julia Sheen. Which, so she lived in a house across the street for free. And now she's living in her grandmother's house for free, taking care of her grandmother. So until this partition, so she's been living free for quite a while. I wonder about how old she must have been. I think mid-40s maybe. So why would she worry? There seemed to be nothing in the past that, because she hadn't paid rent, seemed to be nothing that would trigger her, because it's family property, to go to ask for a deed In other words, why would she? She's not a sophisticated person. Why would she go out and demand a deed as soon as grandma dies, in light of the fact that she's been living free for so long that probably deeds and titles to property aren't on top of her list of things to do until the partition soon arises. You know, I think the records show there have been some arguments before then. I'm guessing these people don't like each other very much. Well, this is, as I say, round three that we're here on. But I guess my point is, Christy Dutton gave no indication until she was sued for rent, that, oh, no, no, I had an agreement way back when to do this to take care of my grandmother, and in return I would get this house. That was never mentioned. And the point I made earlier, and there's so much history, maybe I glossed over it, after she supposedly had this promise that she was going to get this house that she took care of her grandmother, she sued on behalf of her grandmother. She had power of attorney. She sued Barbara Wyman, saying, all of the land that Julia Shane gave to you should come back to her. Because... Come back to who? Come back to Julia Shane. Julia Shane had given Barbara... Not Christy. Right, not Christy. So, and in that complaint, Christy Dutton never said, oh, except for the land that I was promised, you know, this two acres and this house and... Was Julia alive? Yes. Well, maybe... Do you think implicit misunderstanding was that she got that land as long as she... You mentioned the testimony, but it would seem implicit that you're going to stay there and take care of Grandma until she's died. And that's a reasonable interpretation. Well, I don't think there was ever any testimony. I mean, as I say, Grandma got switched because Barbara Wyman got sick. She had taken care of her for a long time. Barbara Wyman didn't get anything in return. I mean, there was no discussion, at least according... Well, for taking care of her mother. I mean, it's not like there's... She got her brother's share of her mother's property. Instead of giving the mother's share of the farm, splitting it three ways between her children, she gave it all to Barbara. That's correct. Well, that's a reward for taking care of your mother. Well, but, yes, there was never any evidence that that was a quid pro quo. In fact, going back to the first few cases, one of the appeals came before this court. The question was... Okay, well, I just take issue with your statement that she got nothing, because my view of the record is she got something. Yeah, I want to go to, I think, the easiest part of this case. At the trial of this case, both Richard and Robert Shane, my client's brothers, fell all over themselves about how they had gotten this survey and how this survey showed 1.99 acres, because they had gone out and worked with the surveyor. And Robert Shane testified that he got the survey from the surveyor, took it down to zoning and planning in Peoria, and everything was done to make this transfer, except Barbara Wyman didn't go down to zoning and planning and sign this survey. There had been discovery requests, are there any surveys? There was never a response that there was. And the trial court entered judgment without ever seeing a survey, just based upon the opposite side's representations that all this had happened. After the trial, I got an affidavit from zoning and planning, said, that never happened, we don't have anything, I know the Shane brothers, I know Jubilee Township, I know all this, there was never a survey filed with me. Five days before the rehearing that I asked for on the court's ruling, oral ruling, a survey appears, and if you look at the briefs, the survey is dated a year after it was claimed to have been in existence. It has two tracts, neither one of which approximate 1.99 acres. There's a one acre parcel and a three acre parcel. And the question I posed to the trial court, what do you award now? You've got a survey here that doesn't represent anything that was testified to. In fact, there was false testimony that there was a survey and that it was taken down. Because the survey itself is dated, the survey that Dutton put into evidence, is dated a year after they claimed it was done. Was it dated before the litigation? It was dated July of 2009. The litigation's been going on so long, I can't remember, frankly, if it was. But the point is, it doesn't show a two acre tract. So the court would have to guess, number one, there was false testimony about the survey. There's no question about that. If you look at it, oh yeah, we went down there, we made sure it was 1.99, I took it to planning and zoning. No survey was ever produced at trial. The trial court just relied on this testimony. And then on rehearing, when the trial court was presented with an affidavit, there was no such thing. And then a survey is admitted that's not the same year and doesn't show any property approximating what Dutton claimed. Well, one of the survey areas was two acres. Pardon? We said one of the surveys was two acres. No, it was one survey. It had two parcels, a one acre and a three acre parcel. And it was done a year later. So there was nothing approximating this very precise, oh, we were supposed to get 1.99 acres. First of all, it was Christie Dutton, right? The two brothers. Christie Dutton was to get the... That's correct. But the brothers testified that they were the ones that worked with the surveyor and obtained the survey and took it to zoning and planning because they said, oh, yes, we all agree. And we went ahead and got the survey and we took it down and it was there in zoning and planning. But when we come back, again, this is supposedly a house in a garage. It says there is no house in a garage on the survey. There's nothing that approximates two acres. So what can you award? You have to pick one of the two tracts. The trial court didn't even do that. It just says, well, we're giving her what's shown on the survey. There's two on the survey. Each is 50% off of what Dutton swore that she was entitled to and what was promised. So we come down to this. How can the trial court not abuse its discretion when it says first after trial, well, I'm awarding whatever is shown on the survey that I don't have when I'm arguing there is no survey. It turns out there was no survey done in 2008. It was a year later. It doesn't show anything approximating what Dutton claimed. So the question is, how can you have proved by clear and convincing evidence what you're entitled to when you have a survey that doesn't approximate anything that you claim you were entitled to and you have to pick one of two tracts, which the trial judge did not do. He just said I'm awarding what's shown on the survey. The judge, I think it's the house, garage, and the Klusky survey. Klusky is the name of the survey. Right, so house and garage and the property described in that. I guess because the survey does not have house and garage identified on it, I read this as saying get the house, the garage, and then this property. But if everything you said is true, and the judge, you can't tell from these, isn't there still enough testimony and description of what you're supposed to get that it can be identified? Well, not at the trial of this case. I mean, if we started all over and said, well, if this court said there was an agreement, you'd have to go out and find out where this property is. But I think the point is that all of this testimony was so precise on the other side, about 1.99 acres, we got it all surveyed, we got it all done, that simply wasn't true. And the trial court didn't even differentiate between two different parcels, didn't even make a guess as to which one it would be. It just said, first of all, he found that there was a survey without a receipt and ordered that it be entitled to whatever is shown on the survey. And then he gets a survey on rehearing that doesn't bear any relevance or aim to date or property at all, with two pieces on it, and then refuses to change his opinion. Well, no, I'm awarding nothing. So, again, we've got to work with the record in front of us that there was a year-later survey that shows two tracks, neither of which match anything. Thank you, Mr. Rock. Mr. Dancy. If it pleases the court, Mr. Rock. Christy Dutton isn't here, but I'd be the first to say that what she did, both in the litigation as a power of attorney and the three last years of her grandmother's life, where she took care of her grandmother, she stood up for her grandmother. Mr. Rock's version of the record is other than what it was. Testimony by Christy Dutton. There was a meeting in April 2008 between herself, her mother, and her grandmother, grandmother's house. They were seated at the kitchen table. I'm looking at the report of proceedings, page 39. Conversation said Barbara no longer felt like she could take care of her mother, Julia Shane, and would Christy be willing to move in the farm and take care of the grandmother? In exchange for taking care of the grandmother, upon the grandmother's death, the house would belong to the Duttons. She's moving out of the house she's in to take care of grandmother for the rest of grandmother's life. This is specifically in the record. Julia Shane was present at that time. Christy asked for the garage, too, since she'd never had a garage and would like to have one. So it was the home place and the shed of the garage and some land. And that was the specific deal, if you move in and take care of grandma. And that's what she did. And Bob and Richard helped her. They fixed it up. They put the ramps in. They made the changes. And she took care of her grandmother until her grandmother died. And there was the litigation that is subsidiary to this in this action. But as the court opined, she was in possession. She didn't, at the time of the previous suits, one in which she was trying to protect her grandmother's interest against her mother, she was looking out for her grandmother. There was no compulsory counterclaims. There's no inconsistency. Nowhere is race judicata. The first time she asserts her rights is properly when she's named as a defendant in the partition suit, and then she sets forth the specifics of the agreement. So when counsel asked what did she do, she did what she agreed to do, and that was take care of her. This disputed land here, the Christendom disputed land, this sits in a larger parcel which is each of the three children on an undivided one-third. Is that correct? That's correct. That's subject to the partition suit. But contrary to what Mr. Rock suggests, if you look at 4A of his supplementary appendix, we have the survey, and the survey cuts out a parcel of about an acre with the house and the shed on it. It specifically does what everybody says the purpose of the survey was. It is specific to what the parties testified. What about the other three acres? Christie's not claiming that. So she's happy with one acre now. Yeah, yeah, yeah. And that is explained when you go to the testimony. First off, Richard Singh, he testified to seeing a surveyor on the property in mid-2008, that's about the time of the agreement, inquired about the survey's purpose, found out the agreement between Christie and his sister and grandma, thought it was the right thing. He was there when Kluski came to get the layout to include the garage. How close to the garage can you get? You know, look at the parcel that Christie was getting since she wanted that. The purpose of that was to make sure the garage and the house were within the parcel. For county reasons, the parcel had to be under one, nine, or two acres. And in talking to his sister, the survey request confirmed his prior knowledge of the agreement. His brother also testifies. Robert Sheen testifies that Kluski ultimately prepared a survey which contained the house and the garage. The mother herself admitted Kluski prepared a survey on cross-examination, but she tried to say it was done four years before. Which, not Barbara Wyman? Yeah, Barbara Wyman, in my cross of her. She stated, well, if we ordered a survey from Kluski for mom, we didn't pay it. She tried to put it four years before. Everybody but Barbara Wyman said the survey was prepared after the deal. And it was finally dated April of 2009, ultimately presented. The court had before it clear testimony with respect to what the deal was, clear testimony, uncontested, that Kluski followed through with the deal, and then ultimately the exact survey that everybody had testified was begun in 2008. The day they began the measurements for the survey, was grandma still alive? Yes, yes. And she was living in that, or assumed to be living in that. Yeah, Kluski was there. I think they moved in. I think it was begun about the same time as the renovations. On that day, when the measurements began in 2008, who held title to that land? Did grandma have a life estate, or did she own that parcel? That, I, the legal, Barbara, it was either grandma and the three kids, or just the three kids. So who would have objected to the survey going on? That's, I guess. Somebody that, no one objected to the survey going on, I guess is what I'm saying. And is it arguable that Barbara had an interest at that point in time and voiced no objection to people? Yeah, yeah, yeah. I mean, they knew where it was coming. If she didn't have a present interest, they knew where it was coming. But everybody knew where the boundaries were. Yeah, absolutely, absolutely. It was pretty close knit. Do you think it's relevant that the survey was not completed, printed, handed out until later? No, no. It takes a while. There was no dispute about possession at that time. The survey really wasn't needed until the contract had been completed, which is when grandmother passes away. There was not going to be any deed until then. And there was an overlap between Justice Schmitt's question and your answer. Justice Schmitt said, would she be happy with one acre? Is it one acre or 1.9 acres? No, it's one. It's one, as shown on the survey. Just one? Yeah. We finally located, Kleski had the survey. He was not deposed, nor was anything subpoenaed for him. So there was no suggestion of any impropriety in the discovery. And the survey is completely consistent with the testimony of three of the four people. What was Kleski's request in her declaratory action? What did she ask the court to decide? To declare that she had the right for the garage and shed and approximately two acres. In order to defeat the claim for past due rent? In order to get that out before they did the petition, partition. If, for some reason, we disagree with you, is there anything that would prohibit the uncles from giving her this one acre in the house from their portion once partition occurs? Well, I guess a two-thirds undivided interest is not. A two-thirds undivided interest is not worth very much in terms of what you can do with it. Aren't they divvying up the land, though? Well, the purpose of the partition is to divvy up the land because they can't reach an agreement. Right. So why can't the land be divided up so Kleski can get this little one acre from her uncles? Well, I suppose it could. It wouldn't be by agreement because, as the court has noted, this really is a domestic case. I agree. In the purest sense of the word. And I guess that if you look at these people, they're hard-working rural people. There's not a lot of guile in them. Judge Brandt is an experienced circuit judge. He saw the brothers. He saw Christie. Do you include Barbara in that description? What's that? People without guile. Is Barbara included in that description? Yeah, largely because the reason you can tell that is that she didn't try to cleverly claim it was something else. She just said none of it happened. She just stonewalled it. She didn't know how else to do it. But the overwhelming, credible testimony is clear that there was an agreement, that Christie followed through with it, and that we know what she should get. Is there an approximate value of this one acre with the house? Never did a market value. It was about her home. It was about the home that was promised to her if she took care of her grandmother. The one thing on what it was she was to get, and Mr. Rock's point is, is there's a significant difference between one acre and 1.99 acres. In fact, depending on which way you come from, it's either 50% or 100%. The guts of it was the house and the shed. So long as you have the house and the shed on the ground, that's what Christie's view was. I think they were battering the acreage around from when they were trying to figure out what it should be. But that was done by the boys who were looking after this. And the purpose was to give her a reasonable amount, but not an over amount, because the others would be divided. It has to be under the two acres to comply with the rules regarding... That was the testimony of Mr. Shane. The zoning said, you know, bring it in under that, and Kleski did. All I would say, it's a facts-intensive case, and the specific facts to justify Judge Brandt's decision and his finding of fact are well established in the record. Does it matter that someone lied about the fact, allegedly lied about the fact that the survey existed? No one lied about the fact the survey existed. The survey did exist. They all testified that it existed. That it had been walked down the city hall or filed with the village? Yeah, Shane said that he dropped it at city hall. Mr. Rock's point is that could not be truthful. Does that matter, or is that a red herring to the outcome of this appeal? I think it is truthful, and it is beside the point. And if you look carefully at the affidavit that he prepared, the guy said, I never accepted a survey. I think what happened was they brought the survey down in April of 2009, and said, you know, we want to file it, and they said, you've got to have the signatures on it, and they couldn't get Barbara Wyman's signature on it. And then it sat there, and ultimately the zoning guy called McKleski up and said, we've got this survey nobody signed, come get it. That's how it got back to Kleski. But that's beside the point in terms of what the evidence showed, both in terms of verbally and in terms of the actions of Christy Dutton in following through. And that we have specifically the Kleski survey detailing exactly what everybody, everybody but Barbara Wyman said was the agreement. If the survey, if the measurements had never taken place, then that would weaken the argument that there was an agreement. Correct? Right. If there was no survey. But does the fact, is the court precluded from declaring that she's entitled to keep the house and the garage? Does that have to be predicated on the fact that it was either measured or surveyed? Oh, I don't, I don't, I don't think so. Because I see Attorney, or I understand Attorney Rock's argument to be, well the court couldn't give them anything because this did not exist, or it wasn't finalized, or it hadn't been filed. In your view, could the court have granted declaratory relief and then ordered a survey to take place? I think the court could have done that. I think the court had the survey been destroyed, so we didn't know. Judge Brandt could have said, she's a surveyor, figure out a limited amount with the house and the shed, and that's what I'm giving her. And we could have argued about whether it should have been 1.1 or 1.5 or 2. We would have believed in the obligation because we found the survey and it was exactly what was expected, pretty much. I'll give you guys one minute. I don't see any other questions. Okay, thank you. Mr. Rock, will you join us? Thank you. I just want to be clear about the brothers and Christy Dutton and Guile. There's no question that the court asked whether or not in that first lawsuit whether Christy Dutton was looking out for her grandmother when she sued Bob Wyman and said all this property should be returned. Testimony was elicited at trial that the brothers financed that, that they paid for the attorney's fees and then sued her later. But didn't that all go the way of the testimony? Isn't that a credibility issue for the trial judge to sort out and not us? I agree. But I think to say that the brothers are guileless is really an issue because I keep coming back to the survey. They swore for the trial court in 2008 this was done. It was taken down to zoning and planning. That absolutely cannot be true because they never produced a survey until post-trial and it's dated a year later than they claimed. They swore they had the survey in hand, took it down to zoning and planning. They couldn't have because it didn't exist. The other problem is it doesn't bear any resemblance. The court had to say, well, I'm just assuming this smaller one-acre tract, which is half what everybody testified to is the one she gets as opposed to a three-acre tract, which is 50% more than what she's going to get. Does the one-acre tract include the house? It says house and shed is what it says. So it does include that? I don't know. You don't even know if the house and the shed? The survey does say house and shed within that one-acre square. Well, that would be reasonable. Would that be reasonable for a trial judge to say, well, this is obviously the property they were talking about? Except they all swore up and down it was two acres, basically, 1.99. You talk about Richard Shane. Richard Shane said, I walked it with the surveyor to make sure it was 1.99 acres. He swore to that at trial. So there was no survey that ever said 1.99 acres. There was never any survey that was done at the time. He claimed that he had done all this work with the surveyor. I guess that's my point where you can, after the fact, say, well, we've got this amorphous survey. Didn't Barbara testify that at some point along the way she agreed to commission a survey? That was years earlier. For what purpose? That they were going to divide off what was called the home place. Why? Well, there was, at one point in time, Dutton was asked, do you want to move out there and take care of grandmother? And she never did. And that's when the discussion occurred, I think it was either three or four years later, or four years earlier than this by the record. But there was no survey that was ever done because Dutton didn't agree to move out there with her grandmother. So. But, again, I guess the court has to guess, the trial court had to guess, which one do we pick here? Well, you really think so when one's got a house on it and a shed and one doesn't? I think that's a guess. I don't think she wants to live in a three-acre cornfield or bean field or timber or whatever and build her own house. In light of all the other discussion, it would seem to me to call it a guess as to which one of those parcels they were talking about. Well, she said she wanted a house in a garage, and it doesn't say house in a garage. It says house in a shed. And there was testimony that this had to be a pretty particular survey because there's buildings around this. We're all from downstate Illinois, and we know that garages can be sheds and they move them out onto the gravel roads. Absolutely. But I go back to the burden is clear and convincing evidence. Absolutely you had to know what you're getting. You had to know what the deal is. And we're here speculating about, well, I guess we can say the one acre was probably what they meant when they kept saying 1.99 and claimed they had a survey. Well, at the time the alleged agreement is made, it's you move out and take care of Grandma and you get her house in the shed, and she takes some property around it, or the house in the buildings maybe that I think they said. I know then there was discussion about it being about two acres, and then there was discussion it had to be under two acres. So the gist is that she takes care of Grandma and she gets the house. This survey seems to demonstrate that there has been a parcel carved out that would accomplish the completion of that agreement. You don't think that there's enough evidence there that would allow the judge to rule that this is what she gets? I think you need to look at the original burden. There's got to be no misunderstandings. The deal has to be clear for the oral convenience of real estate. I would ask the court to go back and look at the brother's testimony about all of this that was done and how it was 1.99 acres when they got done. You match that to what shows up a year later. That's why I think the testimony is so important because they made a big deal out of it's this size. It's right here. Just from a common-sense standpoint, the petition, should I take it, is not resolved? No, this is pending. This needed to be done so that you knew what you had. Is this just revenge litigation? In other words, does Barbara think, looking at this case, that there's any chance that a third of that property she's going to get is going to have that house and shed on it? And two acres out of 140 acres, what's that somewhere under 2%? Is this just going to be the death of a thousand cuts? If she wins here, she's going to lose the house and petition thing. I guess what's the point? I guess it's maybe a little more than that. I think the testimony was that there's buildings, there's outsheds, there's one entrance up to this house that has all of this stuff around it. And if there's a carve-out here, well, how do you get to your other shed? How do you get to the other outbuildings? How do you do any of this stuff? Well, they can't deny access to that other property. There's got to be a way to it. You know that. There's got to be access to it, otherwise they can't petition that property out of there or divide it without providing access to the remainder. That's illegal. So are you suggesting we need to decide maybe it should be 1.9? Well, I don't think we need to. I think Counsel's being pretty generous here. He's saying, you know, everybody talked about 1.9. But we're happy with 1. So as a court, can we look at the record and say, you know what? I think the judge made a mistake. It should be 1.9. It should have ordered another survey. Well, the judge didn't have a survey. And that was, I think, a big error when you say, I'm entitled to a certain piece of property and just trust me. There's a survey out there. I don't know how as a trial judge you say, when the other side says there is no survey, how he decides, well, I'm going to award 1.99 acres shown on this survey that I've never seen, which turns out it wasn't in existence when it was claimed to have been in existence. So what would be wrong if we decide that the court's ruling was 1.99 acres and remanded for the court to determine the boundaries? Why would that not be appropriate if we agree with your opponent? I guess there's been no cross-claim that I'm entitled to more by Christy Dutton, I guess. I don't know how the court would say, even though they haven't asked for it, we're going to give them more at this point. Thank you. Thank you, Mr. Roth. Mr. Dancy, thank you both for your arguments here today. This matter will be taken under advisement. A written decision will be issued as soon as possible. And right now we will take a recess until tomorrow morning. Thank you.